COMMONWEALTH *vs.* DAVID P. MARTINO, JR.

Suffolk.   April 3, 1972. — May 2, 1972.

Present: TAURO, C.J., SPIEGEL, BRAUCHER, & HENNESSEY, JJ.

*Evidence,* Privilege against self incrimination.

The judge in a criminal trial was warranted in permitting the prosecution to call witnesses who defence counsel asserted had stated they would invoke their privilege against self incrimination and refuse to testify concerning an alleged narcotics transaction between the witnesses and the defendant; the judge was not obliged to accept defence counsel's representation of the witnesses' future claims of privilege nor was the judge required to hold a voir dire as to their claiming privilege, and the possibility that the witnesses might refuse to testify on certain matters did not prevent questioning them.   [721–722]

Prejudice to the defendant at a criminal trial through questions to witnesses called by the Commonwealth as to which they claimed their privilege against self incrimination was not shown where it appeared that the judge cautioned the jury not to draw inferences from their claim, that the Commonwealth's case was not based on any such inferences but was amply supported by the testimony of other witnesses for the Commonwealth, and that any such inferences would not have added critical weight to its case.   [722]

INDICTMENTS found and returned in the Superior Court on July 9, 1970.

The cases were tried before *Rose, J.*

*Robert V. Greco (Reuben Goodman* with him) for the defendant.

*Thomas J. Mundy, Jr.,* Assistant District Attorney, for the Commonwealth.

SPIEGEL, J.   The defendant was tried together with one Murray and convicted in the Superior Court on two indictments charging him with the unlawful sale of heroin, and possession of heroin "with intent unlawfully to sell the said heroin."   He appeals under the provisions of G. L. c. 278, §§ 33A–33G.

The defendant contends that the trial judge erred: (1) in allowing the prosecution to call two witnesses (one

DiStasio and one Barraso) after it was indicated that they would refuse to testify; (2) in denying the defendant's requests for voir dire examinations to determine whether the two witnesses would refuse to testify "with the result that they invoked their Fifth Amendment privilege in the presence of the jury"; (3) in denying the defendant's motion for directed verdicts.

From our review of the entire transcript of evidence we discern no value in summarizing the evidence. It would merely serve to clutter this opinion. DiStasio and Barraso were allegedly taking part in a narcotics transaction with the defendant and Murray when the police arrested all four. At bench conferences held before DiStasio and Barraso took the stand at trial, counsel for the defendant stated that he had spoken to each before trial and that they had advised him that they intended to invoke the Fifth Amendment to questions asked by the assistant district attorney concerning this matter. Counsel argued, in essence, that he objected to these witnesses' taking the stand because the jury might infer from their refusal to testify that the defendant and Murray were involved with them, even though the judge might instruct the jury not to draw any such inferences.

The judge was not required to accept counsel's representations that DiStasio and Barraso would refuse to testify. Nor was he required to conduct the voir dire examinations. The only information he could elicit from the witnesses during voir dire would be that, depending on the question, they might possibly refuse to answer. He "could not pass on a claim of self incrimination until a specific question was propounded and the privilege was invoked." *United States* v. *Terry*, 362 F. 2d 914, 917, (6th Cir.).

We have dealt with a similar situation in *Commonwealth* v. *Granito*, 326 Mass. 494, 498–499, where the contention was made that it was error to overrule the defendant's objections to a series of questions asked of a witness called by the Commonwealth. There we noted that "if questions of this sort were put in bad faith and

without foundation, they would be highly improper, and very unfair to the defendant. But we cannot assume on this record that there was no basis for them. . . . Until the witness claimed the privilege it could not be known that they would not be answered. The possibility that the witness may claim the privilege does not prohibit the asking of the question. Wigmore, Evidence (3d ed.) § 2268. *Cutter* v. *Cooper*, 234 Mass. 307, 318." While on the stand, both DiStasio and Barraso answered most of the questions put to them by the assistant district attorney. Some of these answers lent some support to the Commonwealth's case. On several occasions when a Fifth Amendment privilege was claimed, the judge cautioned the jury to draw no inferences from this. Nothing in the record suggests that the prosecution attempted "to build its case out of inferences arising from use of the testimonial privilege." *Namet* v. *United States*, 373 U. S. 179, 186. Nor is this an instance where "inferences from a witness' refusal to answer added critical weight to the prosecution's case." *Id.*, at 187. The principal testimony for the Commonwealth was given by members of the Boston drug control unit who witnessed the transaction and arrested the defendant. As we previously stated, we have reviewed the entire transcript of evidence. We are satisfied that their testimony alone was sufficient to warrant the jury in returning verdicts of guilty.

*Judgments affirmed.*