498 A.2d 816

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Walter FLOYD, Appellee.**

Supreme Court of Pennsylvania.

Argued April 17, 1985.

Decided Sept. 25, 1985.

Reargument Denied Dec. 16, 1985.

Gaele McLaughlin Barthold, Chief, Prosecution Apls., Eric B. Henson, Deputy District Atty., Philadelphia, Pa., for appellant.

Joel S. Moldovsky, Philadelphia, Pa., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

ZAPPALA, Justice.

Appellee, Walter Floyd, was convicted in the Court of Common Pleas of Philadelphia of murder of the first degree and possession of an instrument of crime. He was sentenced to imprisonment for life for murder and eleven and one-half to twenty-three months for possession of an instrument of crime, the sentences to run consecutively. The

Superior Court, 327 Pa.Super. 569, 476 A.2d 414, reversed and remanded for a new trial. We granted the Commonwealth's Petition for Allowance of Appeal.

Appellee was charged in connection with the shooting death of Conway Ennis, which occurred on September 15, 1979 in the basement of a Philadelphia bar. Ennis was allegedly shot after refusing to allow Appellee to join a card game. Several witnesses testified that they heard the shooting, although they did not see it. They saw Appellee flee the scene immediately afterward. One of them said that Appellee had a gun in his belt and that an attempt was made to restrain him. These witnesses were able to identify Appellee in court, although it appears from the testimony and a statement by the prosecuting attorney that he changed his appearance between the time of the shooting and the time of the trial by removing a mustache, a goatee, and sideburns.

The only eyewitness to the shooting was Michael Alexander, a participant in the card game. Alexander testified that he saw the shooting. The prosecutor asked what happened, and the following testimony was given:

Q. Did you see the person that shot him?

A. Not really, no.

Q. What happened that led up to the shooting?

A. Well, I can't remember the whole statement. R. 14a.

Alexander then testified that he gave a statement to the police the next morning, that events were fresh in his mind at the time, and that the statement was "supposedly right." After identifying and being referred to the statement, Alexander described the incident. Parts of the statement were read into evidence. The statement contained a description of the perpetrator that resembled Appellee. The prosecutor unsuccessfully attempted to elicit an in-court identification from Alexander. The testimony was as follows:

Q. The person who shot Conway Ennis, had you seen him before that night?

A. No.

Q. Had you seen him earlier that night?

A. I don't know. I don't know. You see, you bring this up to me, happened a long time ago, right. I can't tell you who that man was, but I know that Ennis had got shot that night.

Q. Are you saying that you are unable to make an identification of the person who shot Conway Ennis?

A. Yes.

Q. Why is that, sir?

MR. SIGAL: Objection, Your Honor.

Q. Why are you unable to make an identification?

THE COURT: Overruled.

A. I can't. I don't know. I can't make distinction. R. 55a.

Alexander then gave the following testimony on cross-examination:

Q. Did you ever identify this defendant before?

A. No.

Q. And you are saying that's not the man that did the shooting?

MR. KING: Objection, Your Honor.

THE COURT: Overruled.

THE WITNESS: Say again.

CONTINUED CROSS EXAMINATION:

Q. Is that what you are saying, is that this is not the man that did the shooting?

A. I don't think so. R. 56a.

The Commonwealth later called a detective, who testified that he showed Alexander a photographic array just after the shooting and that Alexander picked out a photograph of Appellee and identified him as the perpetrator. The detective showed the photograph which Alexander had signed and dated. The photograph was admitted into evidence. No reference to the photographic identification was made during Alexander's testimony.

■■■ The issue before us is whether the testimony of the detective as to the photographic identification was proper. The Commonwealth argues that it was properly admitted to rebut Alexander's testimony that he did not make an identification, given that Alexander was present in court and available for cross-examination. The Superior Court held to the contrary and ordered a new trial. It based its decision on two grounds. The first was that the Commonwealth did not comply with Rule of Criminal Procedure 305(B)(1)(d), which requires disclosure of "the circumstances and results of any identification of the defendant by voice, photograph, or in-person identification." The defense was unaware of the photographic identification. The Commonwealth did not disclose it, although the record indicates that there was a discovery request and the prosecution had the police report of the identification. If defense counsel were aware of such identification, he might have refrained from eliciting on cross-examination the testimony of Alexander that he never made an identification. The possibility of rebuttal by means of the evidence of photographic identification could thereby have been averted. Failure to make required disclosure requires a new trial unless it can be shown to have been harmless beyond a reasonable doubt, *Commonwealth v. Contakos*, 492 Pa. 465, 424 A.2d 1284 (1981). The non-disclosure cannot be deemed to have been harmless in the instant case. The photographic identification was quite damaging to Appellee as it provided the only direct identification of him as the shooter. Because of that and the possible effect on defense counsel's examination of Alexander, the non-disclosure was prejudicial and was a proper basis for the award of a new trial.

In addition, the Superior Court found that the evidence of the photographic identification was erroneously admitted as substantive evidence, which it distinguished from admission merely for impeachment. Such admission was found to be violative of the rule against hearsay. The ruling was contrary to the Commonwealth's claim that the testimony was admissible as substantive evidence.

In *Commonwealth v. Slaughter*, 482 Pa. 538, 394 A.2d 453 (1978), a police officer testified that two individuals identified the defendant as the perpetrator of a murder. One of the individuals appeared as a witness. The other did not. In ruling on the admissibility of the officer's testimony, we did not distinguish between the two declarants. We held that the testimony was inadmissible as hearsay. We also found it to be harmless in view of other evidence of identification. We cannot find the testimony in question to be harmless in the instant case, as there was no other evidence of Alexander having identified Appellee. If a witness is unable to identify the defendant in court but made a previous identification, such previous identification may be established by questioning the witness him or herself. This was permitted in *Commonwealth v. Saunders*, 386 Pa. 149, 125 A.2d 442 (1956) and *Commonwealth v. Harris*, 479 Pa. 131, 387 A.2d 869 (1978). These cases do not apply where, as here, a witness testifies as to an identification made by another person.

In *Commonwealth v. Waller*, 498 Pa. 33, 444 A.2d 653 (1982), a prosecution witness gave testimony in a murder case less favorable to the Commonwealth than that given at a coroner's inquest. The Commonwealth was permitted to contradict the witness by introducing the prior inconsistent statement. Such statement was admissible only to impeach the witness and not as substantive evidence. In *Commonwealth v. Ballard*, 501 Pa. 230, 460 A.2d 1091 (1983), two police officers testified that a Commonwealth witness identified the defendant in a pre-trial photographic array. We held that the testimony was admissible because the witness was in court and subject to cross-examination. The Commonwealth places great reliance on *Ballard* and argues that it requires the admission of the testimony in question in the instant case. The *Ballard* opinion did not mention *Slaughter*, nor did it address either the question of harmlessness, the question of whether the witness must have been questioned about the previous identification and denied making it, or the question

as to whether the testimony was admissible as substantive evidence or merely for impeachment purposes. Justice Flaherty, concurring in *Ballard*, believed that the testimony was inadmissible but harmless in view of other competent identification evidence. We do not read *Ballard* as overruling the holding in *Slaughter*. The testimony as to the identifications in that case, which we found to be improper though harmless, was admitted as substantive evidence and was not used for impeachment. The case can be harmonized with *Waller* and *Ballard*. *Waller* addressed the distinction between substantive and impeachment evidence. Reading the cases together, we hold that a witness may testify as to an identification made by another person if and only if such other person is present in court, is available for cross-examination, has testified, has been questioned about the previous identification, and has denied making it. The testimony as to the identification is to be admitted in such circumstances as a prior inconsistent statement. Applying *Waller*, we hold that the evidence is admissible only for impeachment and not as substantive evidence. The court must so instruct the jury. That was not done in the instant case. The jury was permitted to view the evidence in question as substantive, which was improper and requires that the conviction be set aside.

The Order of the Superior Court is affirmed and the case is remanded to the Court of Common Pleas for a new trial.

NIX, C.J., and LARSEN and HUTCHINSON, JJ., filed concurring opinions.

McDERMOTT and PAPADAKOS, JJ., concurred in the result.

NIX, Chief Justice, concurring.

I agree with the majority that the third party's testimony concerning the prior photographic identification should have been limited in its evidential use to impeachment purposes under the facts of this case. I take issue with the unwarrantedly broad, and in my judgment erroneous proposition,

that prior identification testimony can never be admitted as substantive evidence.

In a recent decision the Supreme Judicial Court of Massachusetts cogently explained the distinction between the facts presented in this case, where the declarant attempts to deny the alleged previous identification, and the general use of prior identification as substantive evidence notwithstanding their hearsay qualities. *Commonwealth v. Daye*, 393 Mass. 55, 469 N.E.2d 483 (1984).

> Prior identifications are admissible as probative evidence notwithstanding their hearsay attributes because of the superior probative worth of an identification made closer in time to the events in question. *Commonwealth v. Weichell*, 390 Mass. 62, 71, 453 N.E.2d 1038 (1983); *id.* at 87, 453 N.E.2d 1038 (Liacos, J., dissenting). Where, however, the extrajudicial identification is established not by the identifying witness but by a person who observed the identification, we believe that probative worth is outweighed by "the hazard of error or falsity in the reporting." McCormick, The Turncoat Witness: Previous statements as substantive evidence, 25 Tex.L.Rev. 573, 588 (1947). Where there is a dispute not only as to the accuracy of a pretrial identification, but also as to whether the identification was in fact made, "the evidential value of the prior identification is almost completely dissipated." *Commonwealth v. Swenson*, 368 Mass. 268, 273 n. 3, 331 N.E.2d 893 (1975). Thus, a police officer's attribution to a witness of a positive identification denied by the witness at trial is not admissible to prove the identification. Its effect is limited to impeachment. See *Commonwealth v. Furtick*, 386 Mass. 477, 481 n. 2, 436 N.E.2d 396 (1982); *Commonwealth v. Swenson, supra.* See also *Commonwealth v. Amado*, 387 Mass 179, 186, 439 N.E.2d 257 (1982).

*Id.*, at 61, 469 N.E.2d at 488 (footnote omitted).

*See also* Wall, *Eye-Witness Identification in Criminal Cases* 161–62 (1965); Mauet, *Prior Identifications in Criminal Cases: Hearsay and Confrontation Issues*, 24

Ariz.L.Rev. 29, 49–50 (1982); *cf. In re L.D.O.*, 400 A.2d 1055 (D.C.1979) (prior identification inadmissible where disavowed by identifying witness); *State v. Jacobs*, 344 So.2d 659 (La.1977) (prior identification of which identifying witness has no recollection inadmissible to bolster in-court identification).

The leading case on the substantive admissibility of prior identifications is *People v. Gould*, 54 Cal.2d 621, 7 Cal.Rptr. 273, 354 P.2d 865 (1960). In *Gould* the California Supreme Court held that a police officer's testimony that an eyewitness, who had chosen the defendant's picture from a photographic array but was unable to make an in-court identification, had been sure of her identification at the time it was made, was properly admitted into evidence. Speaking for a unanimous court Mr. Justice Traynor explained their rationale:

> Evidence of an extrajudicial identification is admissible, not only to corroborate an identification made at the trial (*People v. Slobodion*, 31 Cal.2d 555, 560 [191 P.2d 1]), but as independent evidence of identity. Unlike other testimony that cannot be corroborated by proof of prior consistent statements unless it is first impeached (*People v. Hardenbrook*, 48 Cal.2d 345, 351 [309 P.2d 424]; *People v. Kynette*, 15 Cal.2d 731, 753–754 [104 P.2d 794]), evidence of an extrajudicial identification is admitted regardless of whether the testimonial identification is impeached, because the earlier identification has greater probative value than an identification made in the courtroom after the suggestions of others and the circumstances of the trial may have intervened to create a fancied recognition in the witness' mind. (*People v. Slobodion*, 31 Cal.2d 555, 559–560 [191 P.2d 1]; *United States v. Forzano*, 190 F.2d 687, 689; see *People v. Hood*, 140 Cal.App.2d 585, 588 [295 P.2d 525]; *People v. Bennett*, 119 Cal.App.2d 224, 226 [259 P.2d 476]; 4 Wigmore, Evidence (3d ed. 1940), § 1130, p. 208.) The failure of the witness to repeat the extrajudicial identification in court does not destroy its probative value, for such failure may

be explained by loss of memory or other circumstances. The extrajudicial identification tends to connect the defendant with the crime, and the principal danger of admitting hearsay evidence is not present since the witness is available at the trial for cross-examination. (See *Judy v. State*, 218 Md. 168, 174–175 [146 A.2d 29, 32–33]; McCormick, Evidence, § 39, p. 74; Morgan, *Hearsay Dangers*, 62 Harv.L.Rev. 177, 192–193; 3 Wigmore, Evidence (3d ed. 1940), § 1018, pp. 687–688. See also *State v. Wilson*, 38 Wn.2d 593, 617–618 [231 P.2d 288, 300–301]; *People v. Spinello*, 303 N.Y. 193, 201–202 [101 N.E.2d 457, 460–461].).

*Id.* at 626–27, 7 Cal.Rptr. at 275, 354 P.2d at 867.

The use of third party testimony concerning extrajudicial identifications as substantive evidence where the witness who made the prior identification is present in court and available for cross-examination has been sanctioned in the case law of numerous states. *See, e.g., State v. Kevil*, 111 Ariz. 240, 527 P.2d 285 (1974); *State v. Jackson*, 24 Ariz. App. 7, 535 P.2d 35 (1975); *Martin v. State*, 272 Ark. 376, 614 S.W.2d 512 (1981); *People v. Trujillo*, 189 Colo. 206, 539 P.2d 1234 (1975); *Kurtz v. People*, 177 Colo. 306, 494 P.2d 97 (1972); *Harley v. United States*, 471 A.2d 1013 (D.C.1984); *Rice v. United States*, 437 A.2d 582 (D.C.1981); *Morris v. United States*, 389 A.2d 1346 (D.C.1978); *State v. Freber*, 366 So.2d 426 (Fla.1978); *Henry v. State*, 383 So.2d 320 (Fla.App.1980); *Johnson v. State*, 236 Ga. 616, 225 S.E.2d 14 (1976); *Barriner v. State*, 161 Ga.App. 59, 289 S.E.2d 289 (1982); *State v. Naeole*, 62 Hawaii 563, 617 P.2d 820 (1980); *People v. Warren*, 32 Ill.App.3d 218, 336 N.E.2d 557 (1975); *Bedford v. State*, 293 Md. 172, 443 A.2d 78 (1982); *Mouzon v. State*, 9 Md.App. 57, 262 A.2d 588 (1970); *Gross v. State*, 8 Md.App. 341, 259 A.2d 570 (1969); *Commonwealth v. Torres*, 367 Mass. 737, 327 N.E.2d 871 (1975); *State v. Sinclair*, 49 N.J. 525, 231 A.2d 565 (1967); *State v. Matlack*, 49 N.J. 491, 231 A.2d 369, *cert. denied*, 389 U.S. 1009, 88 S.Ct. 572; 19 L.Ed.2d 606 (1967); *State v. Norwood*, 303 N.C. 473, 279 S.E.2d 550 (1981); *State v. Fennell*,

7 Or.App. 256, 489 P.2d 964 (1971); *State v. Long,* — R.I. —, 488 A.2d 427 (1985); *State v. Nordstrom,* 104 R.I. 480, 244 A.2d 842 (1968); *Niblett v. Commonwealth,* 217 Va. 76, 225 S.E.2d 391 (1976); *State v. Simmons,* 63 Wash.2d 17, 385 P.2d 389 (1963); *State v. Carter,* 282 S.E.2d 277 (W.Va. 1981); *see also* C. McCormick, *Evidence* § 251(c) (3d ed. 1984); Mauet, *supra;* Annot., 29 A.L.R. 4th 104 (1984). Perhaps the most important circumstance in which this hearsay exception comes into play is when the eyewitness is unable to identify the defendant at trial. *See e.g., State v. Kevil, supra; State v. Jackson, supra People v. Gould, supra; People v. Trujillo, supra; Barriner v. State, supra; State v. Fennell, supra; Niblett v. Commonwealth, supra; State v. Simmons, supra.*

In the federal court system, moreover, the admissibility of prior statements of identification is explicitly provided for by Rule 801(d)(1)(C), which provides:

(d) Statements which are not hearsay

A statement is not hearsay if—

(1) Prior statements by witness

The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (C) one of identification of a person made after perceiving him.

Fed.R.Evid. Rule 801(d)(1)(C).

Prior photographic identifications are encompassed by the Rule, *see United States v. Cueto,* 611 F.2d 1056 (5th Cir. 1980); *United States v. Fosher,* 568 F.2d 207 (1st Cir.1980); *United States v. Hudson,* 564 F.2d 1377 (9th Cir.1977); *United States v. Marchand,* 564 F.2d 983 (2d Cir.1977), *cert. denied,* 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 760 (1978); *United States v. Dawson,* 556 F.Supp. 418 (E.D.Pa. 1982) *aff'd mem.,* 727 F.2d 1101 (3d Cir.1984); and the Rule has been consistently held to apply to testimony by third parties, *see United States v. Baker,* 722 F.2d 343 (7th Cir.1983); *United States v. Medina-Martinez,* 12 Fed.R. Evid.Serv. 417 (9th Cir.1983); *United States v. Hinnant,* 9 Fed.Evid.Rptr. 1504 (4th Cir.1982); *United States v. Elemy,*

656 F.2d 507 (9th Cir.1981); *United States v. Cueto, supra; United States v. Lewis,* 565 F.2d 1248 (2d Cir.), *cert. denied,* 435 U.S. 973, 98 S.Ct. 1618, 56 L.Ed.2d 66 (1977). While at least one commentator has argued that the language of the Rule requires the identifying witness to testify concerning his prior identification, *see Mauet, supra* at 162, it appears that third party identification testimony may be admissible under the federal Rule even where the identifying witness denies having made the prior identification, *see United States v. Elemy, supra;* D. Binder, *Hearsay Handbook* § 34.04, at 419 (2d ed. 1984).

The federal rule has, in turn, been adopted in a large number of states. Alaska R.Evid.Rule 801(d)(1)(C); Ariz.R. Evid.Rule 801(d)(1)(C); Ark. Uniform R.Evid.Rule 801(d)(1)(iii); Colo.R.Evid.Rule 801(d)(1)(C); Del. Uniform R.Evid.Rule 801(d)(1)(C); 6C Fla.Stat.Ann.Evid.Code § 90.-801 (West 1979); Hawaii R.Evid.Rule 802.1(3); Iowa R.Evid. Rule 801(d)(1)(C); Mich.R.Evid.Rule 801(d)(1); Minn.R.Evid. Rule 801(d)(1)(C); Mont.R.Evid. § 26–1–801(d)(1)(C); Nev. Rev.Stat. tit. 4 § 51.035(2)(c); N.M.R.Evid.Rule 801(d)(1)(C); N.D.R.Evid.Rule 801(d)(1)(iii); Ohio R.Evid.Rule 801(D)(a), (c); Or.Evid.Code § 40.450(4)(a)(c); S.D.R.Evid. § 19–16–2(3); Tex.R.Evid.Rule 801(e)(1)(C); Utah R.Evid.Rule 801(d)(1)(C); Vt.R.Evid.Rule 801(d)(1)(iii); Wash.R.Evid.Rule 801(d)(1)(iii); 40L Wis.Stat.Ann. § 908.01(4)(a)(3); Wyo.R. Evid.Rule 801(d)(1)(C). Other states have promulgated comparable rules. Cal.Evid.Code § 1238; Kan.Civ.Proc.Stat. Ann. § 60–460(a); N.J.Evid.R.Rule 63(1)(c); N.Y.Crim. Proc.Law § 60.25 (McKinney 1981).

I find this authority persuasive and I am therefore distressed that the majority in its effort to distinguish *Commonwealth v. Ballard,* 501 Pa. 230, 460 A.2d 1091 (1983), which was totally unnecessary under the facts presented in this appeal, ignored the clear language of that opinion embracing the admissibility of prior identification as substantive evidence.

Testimony by a police officer concerning acts of pretrial identification is admiss[i]ble, where the identifying wit-

ness is present in court and subject to cross-examination. *Commonwealth v. Dean,* 300 Pa.Super. 86, 445 A.2d 1311 (1982).

*Id.,* 501 Pa. at 233, 460 A.2d at 1092.

The majority's reliance on *Commonwealth v. Slaughter,* 482 Pa. 538, 394 A.2d 453 (1978), is misplaced. That case did not squarely address the issue of third party identification testimony. In *Slaughter* two police officers testified generally as to the fact of prior identifications of the accused. The first officer stated during cross-examination that he *had not been present* during the identifications but that the information had been relayed to him by others. On redirect examination that officer named the two identifying witnesses. The latter testimony was clearly double hearsay: the officer merely related that he had been told that two individuals had identified the defendant. The second officer stated that a witness *who was not present in court* and could not be located had identified the defendant. This, too, was hearsay not subject to any cognizable exception to the hearsay rule.

Similarly, *Commonwealth v. Waller,* 498 Pa. 33, 444 A.2d 653 (1982), which I authored, lends no support to the majority's thesis. In *Waller* the appellant challenged the Commonwealth's use of a prior inconsistent statement of one of its own witnesses as impeachment evidence, asserting that the prior statement was not inconsistent with the witness' in-court testimony. That claim was rejected. The question of third party identification testimony was not before the Court. Thus neither case on which the majority relies in any way compels the majority's unduly restrictive reading of *Ballard.*

LARSEN, Justice, concurring.

I concur in the result reached in this case, but write separately to express my reasoning.

The opinion announcing the judgment of the Court makes a considerable effort to reconcile this Court's opinions in *Commonwealth v. Slaughter,* 482 Pa. 538, 394 A.2d 453

(1978) and *Commonwealth v. Ballard*, 501 Pa. 230, 460 A.2d 1091 (1983). I think that this effort is unnecessary.

In *Slaughter*, this Court simply stated that testimony by a police officer concerning out-of-court identifications by two witnesses to a crime was hearsay. Since the admission of that testimony was harmless, however, there was no need for this Court to actually decide whether such testimony might be admissible under circumstances other than the ones presented in that case—for example, in a case where the admission of the testimony would not have been harmless. *Slaughter* is, therefore, of no precedential value in deciding this case, in which the admission of the testimony concerning Michael Alexander's out-of-court identification was not harmless.

Nor do I think that *Ballard* applies to this case. The opinion in *Ballard* did not contain any factual details, but simply stated that "[t]estimony by a police officer concerning acts of pretrial identification by a witness is admissible, where the identifying witness is present in court and subject to cross-examination." 501 Pa. at 233, 460 A.2d at 1092. However, the trial court's opinion in *Ballard* reveals that not only was the witness present in court and subject to cross-examination, but that "during her direct examination she unequivocally stated she was certain of her identification at the time she made it." Slip opinion at 5. In view of this fact, it would be unnecessary and inaccurate to now read *Ballard* as holding that testimony concerning a witness's out-of-court identification is admissible in every case where the witness is present and available for cross-examination.*

---

* In fact, the admission of testimony concerning a witness's out-of-court identification as substantive evidence under the circumstances present in *Ballard* is analogous to the admission of evidence under the past recollection recorded exception to the hearsay rule. *See Commonwealth v. Shaw*, 494 Pa. 364, 368, 431 A.2d 897, 899 (1981) (citation omitted) ("In order for the content of a writing to be admissible as past recollection recorded, the record must show that four requirements are met: '1) the witness must have had firsthand knowledge of the event; 2) the written statement must be an original memorandum made at or near the time of the event and while the witness had a

Without these cases as precedents, it still remains to be determined whether and to what extent testimony concerning Michael Alexander's out-of-court identification of appellee was admissible. I would hold that, under normal circumstances, such testimony is most like testimony concerning a prior inconsistent statement of a witness and should be admissible under the same circumstances as a prior inconsistent statement.

A prior inconsistent statement may be admitted into evidence after a foundation for its admission has been established—for example, if the witness denies ever having made the statement. McCormick, Evidence § 37 at 72 (2d ed. 1972). When such testimony is admitted, it is limited to the purpose of impeaching the witness's trial testimony and may not be used substantively. *Commonwealth v. Waller*, 498 Pa. 33, 38, 444 A.2d 653, 656 (1982). Likewise, once a witness testifies at trial and denies ever having identified the defendant prior to trial, evidence of the witness's prior identification becomes admissible, but only to impeach his credibility.

I would further hold, however, that this case did not involve the "normal circumstances" which would justify

clear and accurate memory of it; 3) the witness must lack a present recollection of the event; and 4) the witness must vouch for the accuracy of the written memorandum.' "). *See also Commonwealth v. Harris*, 479 Pa. 131, 387 A.2d 869 (1978) (out-of-court photographic identification testimony was properly admitted after witness testified that she had a good view of the perpetrator at the time of the crime, that she was certain he was the man depicted in the picture she identified, and that she was unable to make an in-court identification because of changes in the hairstyle and moustache of appellant). It appears that this was also the situation contemplated by the Superior Court in this case when it held that

[t]he reason for excepting any particular category of out-of-court statement to the hearsay rule is because experience shows that it is substantially more trustworthy than hearsay in general. We think that a fresh statement of identification made soon after a crime or other occurrence by a witness thereto is substantially more trustworthy than hearsay in general *only* if the witness vouches for the identification under oath at trial. Absent this important indicium of trustworthiness, we do not think that it merits exception to the hearsay rule.

327 Pa.Super. at 577, 476 A.2d at 418.

admitting testimony concerning Michael Alexander's prior identification of appellee even for the purpose of impeaching Michael Alexander's trial testimony, since the conduct of the Commonwealth in "laying a foundation" for the admission of this testimony was highly improper. In this case, the Commonwealth did not disclose the fact of Michael Alexander's photographic identification of appellee to appellee's counsel, even though there was a discovery request for such information. Under these circumstances, I would hold that the Commonwealth should not have been permitted to take advantage of the ignorance of appellee's counsel, allowing him to unwittingly lay the foundation for the Commonwealth to introduce its own evidence, and I would conclude that the testimony concerning Michael Alexander's out-of-court identification of appellee should have been excluded.

Even if it was not error to admit that testimony, however, I would agree with the opinion announcing the judgment of the Court that it was error for the trial court not to instruct the jury on the limited purpose for which the police officer's testimony concerning the out-of-court identification could be considered, and on this basis, I concur in the disposition of this appeal.

HUTCHINSON, Justice, concurring.

Superior Court was plainly correct in one of its two alternate grounds for granting a new trial. The admission as substantive evidence of the detective's testimony that the witness had made an out of court declaration that appellee's photograph showed the killer was reversible error on the facts of this case. Moreover, Superior Court's holding on the use of the out of court identification for impeachment purposes, as Mr. Justice Zappala notes in his opinion announcing the judgment of the Court, is required by our decision in *Commonwealth v. Ballard*, 501 Pa. 230, 460 A.2d 1091 (1983). The remaining discussion of the discovery rule is, to my mind, unnecessary. I therefore disas-

sociate myself from that portion of the opinion and concur in the result.